Citation Nr: 1452682 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 11-05 795 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to a rating in excess of 20 percent for a postoperative left knee disability.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

Veteran and Spouse


ATTORNEY FOR THE BOARD

Megan C. Kral, Associate Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from September 1989 to March 1992. This matter is before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Waco, Texas Department of Veterans Affairs (VA) Regional Office (RO). In February 2012, a videoconference hearing was held before the undersigned; the transcript of the hearing is associated with the Veteran's record. In April 2014, this issue was remanded for additional development. [In April 2014, the Board also granted service connection for lumbar spine degenerative disc disease and denied service connection for left hip arthritis; those matters are no longer before the Board.]


FINDINGS OF FACT

At no time under consideration is the Veteran's left knee disability shown to have been manifested by more than slight limitation of motion, due to pain (compensable limitations of flexion and extension are not shown); subluxation and/or instability are not shown; and the knee is not ankylosed. 


CONCLUSION OF LAW

A rating in excess of 20 percent is not warranted for the Veteran's left knee disability. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.21, 4.71a; Diagnostic Codes (Codes) 5010, 5256-5263 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claim. In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

The Veteran was advised of VA's duties to notify and assist in the development of the claim prior to the initial adjudication of his claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). A November 2009 letter explained the evidence necessary to substantiate the claim, the evidence VA was responsible for providing, and the evidence he was responsible for providing. The Veteran has had ample opportunity to respond/supplement the record, and has not alleged that notice was less than adequate.

A hearing before the Board was held in February 2012. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who conducts a hearing fulfill two duties to comply with the above the regulation: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the undersigned noted that the Veteran had asserted his left knee disability worsened since the previous examination, and indicated that a new examination would be ordered. In essence, the Veteran was advised that VA would arrange for the development needed to substantiate his claim (and such development was completed).

The Veteran's pertinent treatment records have been secured. The RO arranged for VA examinations in December 2009 and (pursuant to the Board's April 2014 remand) in October 2014. The Board finds that VA examination reports contain sufficient findings and informed discussion of the pertinent history and features of the left knee disability to constitute probative medical evidence adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide this matter, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159(c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

Legal Criteria, Factual Background, and Analysis

The Board notes that it has reviewed all of the evidence in the Veteran's record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim.

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earnings capacity caused by the given disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 

When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 U.S.C.A. 
§ 5107; 38 C.F.R. §§ 3.102, 4.3. In a claim for an increased rating, "staged" ratings may be warranted where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's service-connected left knee disability has been rated under Codes 5003-5260 (for arthritis with limitation of flexion). 

Flexion of the knee to 140 degrees is considered full and extension to 0 degrees is considered full. See 38 C.F.R. § 4.71, Plate II. Flexion of the leg limited to 60 degrees warrants a 0 percent rating, flexion limited to 45 degrees warrants a 10 percent rating, flexion limited to 30 degrees warrants a 20 percent rating, and flexion limited to 15 degrees warrants a 30 percent rating. 38 C.F.R. § 4.71a, Code 5260. Extension limited to 5 degrees warrants a 0 percent rating, extension limited to 10 degrees warrants a 10 percent rating, extension limited to 15 degrees warrants a 20 percent rating, extension limited to 20 degrees warrants a 30 percent rating, extension limited to 30 degrees warrants a 40 percent rating, and extension limited to 45 degrees warrants a 50 percent rating. 38 C.F.R. § 4.71a, Code 5261.

Knee disability may separately be rated based on instability or subluxation. A 30 percent rating is warranted for recurrent subluxation or lateral instability, when severe; a 20 percent when such impairment is moderate; and a 10 percent when such impairment is slight. 38 C.F.R. § 4.71a, Code 5257.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. 
§§ 4.10, 4.40, and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse. 
38 C.F.R. § 4.45.

Rating the disability under diagnostic Codes for other knee disability (5256, 5258, 5259, 5262, 5263) would be inappropriate as the Veteran's left knee disability does not include the pathology required in the criteria for those Codes (ankylosis, recurrent, dislocated or post-removal semilunar cartilage, malunion or nonunion of tibia or fibula, or genu recurvatum). 38 C.F.R. § 4.71a. 

On June 2008 VA examination the Veteran's left knee had 40 degrees loss of flexion, 5 degrees loss of extension, and noted severe functional impairment due to pain. Based on that examination the current 20 percent rating was assigned.

In March 2009, prior to his September 2009 claim for increase, the Veteran underwent left knee arthroscopy due to increased left knee pain and a meniscus tear. 

[From March 4, 2009 through June 30, 2009 the left knee disability was rated 100 percent for convalescence following surgery (under 38 C.F.R. § 4.30). He has not disagreed with the convalescence rating. Therefore, that period of time is not for consideration.]

VA treatment records show that following the surgery the Veteran was using a cane to walk and wore a brace for stabilization. In May 2009 left knee flexion was noted to be to 110 degrees. He returned to work June 1, 2009. Physical therapy notes from September 2009 show he presented with diminished left hamstring muscle, pain at the medial patella, and grinding. Physical therapy notes show that there was no instability, but there was irregular tracking. There was good range of motion, and the knee was noted to have a positive prognosis. 

A December 2009 private x-ray report notes a normal knee; that month he was also seen at a VA facility, where left knee pain was noted. 

On December 2009 VA examination, the Veteran reported pain, weakness, stiffness, swelling, giving way, fatigability, and lack of endurance. He denied instability, heat, redness, and locking. He reported occasional flare-ups with prolonged standing, walking, kneeling, or sitting. The examiner noted the Veteran used a cane and had an abnormal gait. Dislocations, subluxation and inflammatory arthritis were not found. Range of motion studies showed flexion from 0 to 95 degrees, with pain. Extension was normal. The Veteran was able to perform repetitive testing, without additional loss of range of motion. Following repetitive motion testing, the Veteran reported pain, fatigue, and lack of endurance. On examination, the examiner noted painful motion, tenderness, abnormal movement, and guarding of movement. It was noted that the Veteran was very limited in standing and walking. Contemporaneous x-rays were normal. There was no instability. The Veteran reported that he was unable to play sports with his son and had limited mobility to perform daily activities. He also reported that he was limited at work, because he was unable to drive long distances, run, or engage in prolonged standing or walking. An anterior knee arthrotomy scar measuring 8 centimeters was noted. Progressive knee pain with limited activity was noted to be a residual of the Veteran's left knee surgery. 

VA treatment records following the December 2009 examination show that the Veteran continued to receive treatment for left knee pain. He continued to use a cane and exhibit an antalgic gait. A May 2010 radiology report notes that left knee x-rays were unchanged since June 2008. 

In October 2010, it was noted that the Veteran had decreased flexion. 

At the February 2012 hearing, the Veteran testified that his knee disability prevents him from playing sports with his son. He reported he had numerous falls around the house. He believed that because of his knee disability he was demoted to a dead-end job as a clerk as opposed to being an inspector. He testified that this was because of his inability to sit, stand, or walk for prolonged periods. He testified he wore a knee brace and used cane for mobility, but even with these assistive devices, did not feel as active as he would like to be. He no longer went fishing or camping as in the past. His wife confirmed that he fell a number of times and that his knee gives out on him. 

A June 2013 radiology report notes that left knee X-rays show an essentially normal knee with no significant change from May 2010. 

On October 2014 examination, the Veteran reported that he was still employed. Patella fracture, status-post patellectomy; medial meniscal tear, chondromalacia patella, arthritis, and tendonitis were diagnosed. On examination, the Veteran reported his left knee gave out and locked, with painful exacerbations two to three times a month. He reported use of a brace and cane, and that he lost his balance and had fallen multiple times in the recent past. He denied flare-ups. Range of motion studies revealed flexion to 100 degrees and normal extension. After repetitive testing, there was no additional limitation of range of motion. However, it was noted that there was pain on movement, and atrophy was noted. On examination, pain to palpation was noted. All tests for instability were negative. There was no evidence of subluxation or dislocation. It was noted that the Veteran underwent knee surgery in 1990, 1991, and 2009, but did not show any residual signs or symptoms other than those already reported. A scar less than 39 square centimeters was noted. The examiner noted the Veteran regularly wore a brace and used a cane for mobility. Arthritis was confirmed. The Veteran reported that he cannot lift heavy objects or walk for prolonged periods due to knee pain, which impacted on his ability to work. 

The examiner noted that left knee X-rays in 2013 showed no worsening of arthritis or exostosis compared to 2008 (though a left knee MRI showed severe chodromalacia patella). The examiner noted that the Veteran had additional disabilities that are contributing to his pain, weakness, numbness, and paresthesia. Specifically, it was noted that the Veteran has diabetic peripheral neuropathy of the bilateral lower extremities, left sided lumbosacral radiculopathy, and lumbar spinal stenosis. Because of these additional disabilities, the examiner could not fully assess the Veteran's functional limitations. Because the Veteran denied experiencing flare-ups, the examiner noted that he could not provide an opinion as to additional loss of function or range of motion during to flare-ups without resorting to speculation. 

As the Veteran's left knee disability is already rated at 20 percent, the analysis focuses on the criteria that would allow for an increase. 

During the evaluation period, flexion of the knee was never shown to be limited to 45 degrees or less and extension was never limited at 10 degrees or more, so as to warrant a compensable rating for limitation of either flexion or extension (and an increased rating based on limitation of either or both of these functions). Furthermore, while the Veteran argues that his use of a cane, knee brace, and frequent falls reflect instability, no examination or treatment report notes a positive test for instability or subluxation. Consequently, a separate compensable rating under Code 5257 (for subluxation or instability) is not warranted. While the Veteran reported periods of locking with pain, locking has not been found on any examination or noted in any treatment; therefore, there is no basis for identifying a period when a rating for such functional limitation (under Code 5258) could be assigned. X-ray reports from May 2010 and June 2013 note the Veteran's knee remained essentially unchanged since June 2008. Moreover, it appears his left knee range of motion has actually improved following the March 2009 surgery (and since the 20 percent rating was assigned). Accordingly, an increased rating for the Veteran's right knee disability is not warranted under any applicable criteria.

The Veteran's representative argues that he should be considered for an extraschedular rating under 38 C.F.R. § 3.321(b). The Veteran and his representative stress that because of the left knee disability he was forced to take a desk job, rather than remain an inspector. However, the schedular rating contemplates a degree of occupational impairment. See 38 C.F.R. § 4.1. The evidence does not show any manifestations/impairment of function not encompassed by the criteria for the 20 percent schedular rating assigned. The Veteran asserts that he cannot walk, stand, or sit for prolonged periods due to knee pain; all such symptoms which are contemplated by the schedular criteria. Notably, the schedular criteria provide for ratings in excess of the 20 percent rating currently assigned for greater degrees of knee disability, but a greater degree of disability is not shown. As the evidence does not show, and the Veteran and his representative do not point to, any symptoms or impairment not contemplated by the schedular criteria, those criteria are not inadequate, and referral of this matter for consideration of an extraschedular rating is not warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). Notably, inability to engage in more strenuous types of employment does not, of itself, signify marked interference with employability.

Since the Veteran is employed, the matter of entitlement to a total rating based on individual unemployability (TDIU) is not raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 
ORDER

A rating in excess of 20 percent for a postoperative left knee disability is denied.


____________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs